COMMONWEALTH *vs.* BENJAMIN WALKER
(and thirteen companion cases[1]).

No. 05-P-1045.

Middlesex. June 14, 2006. - February 12, 2007.

Present: LAURENCE, GELINAS, & COHEN, JJ.

*Assault with Intent to Rape. Practice, Criminal,* Verdict, Instructions to jury, Reasonable doubt, Argument by counsel. *Joint Enterprise. Reasonable Doubt.*

In the circumstances of a criminal case, the judge hearing the defendant's motion for a required finding of not guilty pursuant to Mass.R.Crim.P. 25(b)(2) abused his discretion and committed an error of law in reducing the finding and then entering a finding of not guilty [196-198]; further, the judge erred in granting a motion for a required finding of not guilty brought by a codefendant tried on a theory of joint venture and reducing the finding, where there was more than sufficient evidence to show that the codefendant shared the intent of the principal, and where the judge was without discretion to reduce the verdict in conjunction with allowing the reduced finding — on an offense that was not a lesser included offense of the original conviction — to stand [198-200].

An obvious misstep made by a trial judge while giving preliminary "abbreviated" instructions on reasonable doubt to a jury during a criminal trial held no serious potential to reduce the Commonwealth's burden or otherwise confuse the jury as to the definition of reasonable doubt, where the phrase in question appeared in the correct form in the preliminary written instructions given to the jury, and where the judge repeated the correct charge in his final instructions to the jury [200-202]; further, the defendants failed to demonstrate that the judge erred in describing the standard of proof to a moral certainty [202-203], or that the judge provided an inadequate description of the phrase "moral certainty" [203] in the written instructions; finally, the judge's distribution of the written instructions to the jury without the defendants' consent did not, in the circumstances, create any form of reversible error [204-206].

At the criminal trial of two codefendants, certain statements made by one defendant's counsel in closing argument, when considered in the context of the entire argument, and in light of the judge's instruction to the jury and the evidence at trial, did not give rise to prejudicial error or any error that would amount to a substantial risk of a miscarriage of justice with respect to the second defendant. [206]

---

[1]Eleven against Benjamin Walker, one against Garrett Broberg, and one against Ronnie Phillips.

INDICTMENTS found and returned in the Superior Court Department on August 7, 2001.

The cases were tried before *Mitchell J. Sikora, Jr.*, J., and motions for required findings of not guilty were heard by him.

*Kevin J. Mahoney* for Ronnie Phillips.

*Stephen Hrones* for Benjamin Walker.

*Marguerite T. Grant*, Assistant District Attorney (*K. Nathaniel Yeager*, Assistant District Attorney, with her) for the Commonwealth.

*Edward P. Ryan, Jr.*, for Garrett Broberg.

GELINAS, J. While traveling in the Boston area in April, 2001, on a field trip, and accompanied by five chaperones, the defendants, all then students at the Philipsburg-Osceola High School in Pennsylvania, engaged in a variety of activities with sexual overtones, primarily directed against one of their fellow students. As the specific facts do not bear directly on the issues raised in this appeal, we need not recite the sordid details of the defendants' actions, except to note that they were alleged to have occurred periodically over the two-day trip and allegedly involved attempted forced oral sex and other indignities visited primarily on one victim. Some detail will appear in our discussion of the issues.

After trial, a jury found the defendant Ronnie Phillips guilty on one indictment charging assault and battery; the defendant Benjamin Walker guilty on four indictments charging indecent assault and battery on a person over fourteen, four indictments charging open and gross lewdness and lascivious behavior, three indictments charging assault and battery, and one indictment charging assault with intent to rape; and the defendant Garrett Broberg guilty on one indictment charging assault with intent to rape; the remaining convictions of defendant Broberg are not before us on appeal because he withdrew his appeal from the judgments. The jury acquitted each defendant of other charges arising out of the incidents, and the judge allowed motions for required findings of not guilty on yet others.

At sentencing, the trial judge purported to exercise his discretion pursuant to Mass.R.Crim.P. 25(b)(2), 378 Mass. 896 (1979), and its statutory predicate, G. L. c. 278, § 11, and allowed

Walker's and Broberg's motions for required findings of not guilty with respect to the verdicts on the indictments charging each of them with assault with intent to rape. The Commonwealth appeals from the orders allowing Walker's and Broberg's motions pursuant to rule 25(b)(2).

Defendants Walker and Phillips also appeal, claiming that the trial judge erred in giving a partial instruction with respect to reasonable doubt during the trial. The partial instruction was given both orally and in writing, and the jury were encouraged to refer to the written instruction both during the trial and while in deliberation.

1. *The Commonwealth's appeals.* On appeal, the Commonwealth argues that the judge abused his discretion and committed error of law in ruling Walker not guilty of assault with intent to rape, in a purported exercise of his discretion under rule 25(b)(2). In his written memorandum the judge acknowledged that a "rational trier of fact could find beyond a reasonable doubt that Benjamin Walker possessed the specific intent to insert his penis into the mouth of [the victim] as part of the bed tackling incident"; he concluded, however, that the evidence of specific intent was of "slim" or marginal sufficiency within the meaning of *Commonwealth* v. *Ghee*, 414 Mass. 313, 322 (1993). He acknowledged further that as a more recent pronouncement upon the purpose and scope of rule 25(b)(2), the standard set out in *Commonwealth* v. *Rolon*, 438 Mass. 808, 820 (2003), for reduction of verdicts to lesser findings under rule 25 (b)(2) was inconsistent with the standard for directed verdicts against the prosecution.[2] The judge concluded that "[i]n these circumstances and under the standard of *Rolon*, I would reduce the finding of assault with intent to rape to the lesser included finding of indecent assault and battery upon a person 14 or over." He then concluded that as the jury had found guilt "upon the same conduct," the "[r]eduction . . . to the lesser included offense would result in a redundant convic-

---

[2]The rule provides, in relevant part: "If a verdict of guilty is returned, the judge may on motion set aside the verdict and order a new trial, or order the entry of a finding of not guilty, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint." Mass. R.Civ.P. 25(b)(2), 378 Mass. 896 (1979).

tion"; consequently, he entered a finding of not guilty on the assault with intent to rape.

Rule 25(b)(2) and its statutory predicate, G. L. c. 278, § 11,[3] offer a defendant, on motion after jury verdict, three options for potential relief: a new trial, a verdict of not guilty, or the entry of a verdict of any lesser included offense. The first and third of these are addressed, in some measure, to the sound discretion of the judge and permit the judge to consider, among other factors, the weight and sufficiency of the evidence. See *Commonwealth* v. *Torres*, 24 Mass. App. Ct. 317, 322 (1987). As noted, however, in order that there be a reduction of verdict under the third option, the reduced verdict must be a lesser included offense of the offense involved. Indecent assault and battery is not a lesser included offense of assault with intent to rape. See *Commonwealth* v. *Oliveira*, 53 Mass. App. Ct. 480, 482 (2002) (indecent assault and battery is not a lesser included offense of assault with intent to rape, "intent to rape is not an element of indecent assault and battery, and a battery is not an element of assault with intent to rape"). Because the crime to which the judge reduced the conviction was not a lesser included offense of assault with intent to rape, the discretion that the judge purported to exercise did not come within the options available to him under rule 25(b)(2), and constituted an error of law. Contrast *Commonwealth* v. *Woodward*, 427 Mass. 659, 667 n.12 (1998) (providing summary of cases where trial judges reduced verdicts to lesser included offenses under rule 25[b][2]).

To the extent that the judge's action purported to dismiss the charge of assault with intent to rape by the entry of a verdict of not guilty, the action was also an abuse of discretion and an error of law. In order to enter a verdict of not guilty, our courts have consistently held that the standard is that for a required finding of not guilty as set out in *Commonwealth* v. *Latimore*,

---

[3]The statute only delineates two of the three options and provides: "If a motion for a directed verdict of not guilty is denied and the case is submitted to the jury and a verdict of guilty is returned, the judge may on a renewed motion for a directed verdict of not guilty pursuant to the Massachusetts Rules of Criminal Procedure set aside the verdict and order a new trial, or order the entry of a finding of guilty of any offense included in the offense charged in the indictment or complaint." G. L. c. 278, § 11, as appearing in St. 1979, c. 344, § 43A.

378 Mass. 671, 677 (1979), and its progeny. See *Commonwealth* v. *Berry, ante* 78, 81 (2007). "That standard is whether there was enough evidence, when taken in the light most favorable to the Commonwealth, that 'could have satisfied a rational trier of fact of each [essential element of the offense] beyond a reasonable doubt.' In using that standard the judge cannot weigh the evidence or assess the credibility of the witnesses. To hold otherwise would allow a trial judge to invade the province of the jury as the sole finder of fact in a jury trial." *Commonwealth* v. *Torres, supra* at 324, quoting from *Commonwealth* v. *Latimore, supra* at 677-678. Accord *Commonwealth* v. *Doucette,* 408 Mass. 454, 455-456 (1990); *Commonwealth* v. *Elliffe,* 47 Mass. App. Ct. 580, 583-584 (1999); *Commonwealth* v. *Shabo,* 47 Mass. App. Ct. 923, 924 (1999). See also *Commonwealth* v. *Coleman,* 434 Mass. 165, 169-170 (2001). The entry of a verdict of acquittal after the jury found Walker guilty of assault with intent to rape must be reversed, and the conviction reinstated.

We next address the judge's entry of an acquittal in favor of defendant Broberg after the jury's verdict of guilty of assault with intent to rape on a theory of joint venture. The judge articulated two different rationales. First, the judge stated that under the standard set out in *Commonwealth* v. *Latimore, supra,* "a rational trier of fact could not find beyond a reasonable doubt a shared intent on the part of Broberg that Walker insert his penis into [the victim's] mouth as part of the bed tackling incident." On our review of the record, we conclude that this determination was in error.

In reviewing a motion for required finding of not guilty, we consider the evidence, together with permissible inferences from that evidence, in the light most favorable to the Commonwealth, to "determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth* v. *Cordle,* 412 Mass. 172, 175 (1992). See *Commonwealth* v. *Latimore,* 378 Mass. at 676-677; *Commonwealth* v. *Lodge,* 431 Mass. 461, 465 (2000); *Commonwealth* v. *Grandison,* 433 Mass. 135, 140-141 (2001). In evaluating the sufficiency of the evidence, we resolve all issues of credibility in favor of the Commonwealth. *Commonwealth* v. *James,* 424 Mass. 770, 785 (1997). *Commonwealth*

v. *Platt*, 440 Mass. 396, 400-401 (2003). "The inferences cannot be too remote but 'allowable inferences need not be necessary or inescapable.' " *Commonwealth* v. *Walker*, 401 Mass. 338, 340 (1987), quoting from *Commonwealth* v. *Anderson*, 396 Mass. 306, 311 (1985). The standard may be met on inconsistent evidence. *Commonwealth* v. *Peters*, 429 Mass. 22, 24 (1999). *Commonwealth* v. *Plouffe*, 52 Mass. App. Ct. 543, 545 (2001).

Our review of the evidence shows that there was sufficient evidence, when considered under this standard, to show that Walker and Broberg shared the intent to orally rape the victim. There was evidence that on Saturday night, Walker said in front of Broberg that the victim would give a "blow job." The jury heard evidence from which they might conclude that on Sunday morning, Walker and Broberg agreed that the victim would "suck a cock" that night. Over a thirty-six hour period both Walker and Broberg sexually assaulted the sleeping victim, slapping their penises against his face repeatedly, and touching their penises to his lips. On Sunday evening, Walker tackled the victim onto a bed; Broberg, with his penis exposed, and another held the victim down, and Walker straddled the victim's chest and tried to put his penis into the struggling victim's mouth. This evidence was more than sufficient to permit a rational trier of fact to find a shared intent to rape the victim. See *Commonwealth* v. *Zemtsov*, 443 Mass. 36, 40-42 (2004).

Additionally, in ruling on Broberg's motion, the judge, citing to *Commonwealth* v. *Ghee*, 414 Mass. 313, stated that "[u]nder the *Rolon* standard, I conclude that, at most, the evidence would permit a criminal finding of shared intent of a technically sufficient, but 'slim' or marginal character on the part of Broberg." On this basis the judge "reduce[d] the guilt of Broberg under [r]ule 25(b)(2) . . . especially under the standard of *Rolon*," indicating that he would let stand Broberg's conviction of indecent assault and battery upon a person over the age of fourteen years. This ruling again was an abuse of discretion and error of law. Nothing in either the rule or the statute permits the reduction of a verdict in conjunction with allowing another conviction — that is not a lesser included offense — to stand. The judge indicated in his ruling that the standard set out in

*Latimore* had indeed been met, and for the reasons set out above, we agree. The jury's conviction of Broberg for assault with intent to rape must be reinstated. Both matters must be returned to the Superior Court for sentencing.

2. *The defendants' appeals.*[4] On the fourth day of trial, in the midst of the Commonwealth's case, the trial judge distributed to the parties copies of proposed written instructions, including a proposed "abbreviated" instruction on reasonable doubt. The judge stated his intention to give copies of these written instructions to the jury for their reference during trial. The judge was apparently motivated by a desire to help the jury in what he saw as a complex case, involving multiple defendants and a comparatively large number of indictments.

Both the Commonwealth and each of the defendants objected to the proposed abbreviated charge on reasonable doubt. All of the parties requested that the judge instead hew strictly to the precise language of the familiar instruction contained in *Commonwealth* v. *Webster*, 5 Cush. 295, 320 (1850), or one of its modern analogues. The judge was unmoved by the objections, but stated, perhaps by way of compromise, that he would explain to the jury that these written instructions provided merely an overview of the law, and that he would give more comprehensive instructions after all of the evidence had been presented.

Shortly thereafter, the judge charged the jury as follows:

> "I want to give you two other basic definitions which are important to our case[;] one is the definition of proof beyond a reasonable doubt . . . . I'm going to read each of these basic definitions to you at this time. Our court officer will then distribute the written definitions to you. I want you to keep them with your notebook throughout the trial, and I would want you to study them during your moments in the deliberation room, during breaks, lunch, before we begin in the morning . . . [and] after we finish in the afternoon. If you wish to remain in the deliberation

---

[4]Although it appears that all of the defendants may have objected to the proposed preliminary instructions at trial, only Phillips and Walker have appealed on this basis. (The defendant Broberg withdrew his appeal from the judgments.)

room for a short amount of time to do any studying of these, you are welcome to do so."

The judge continued:

"After we have heard the evidence, I'm going to give you a final and comprehensive charge, both orally, and again, I'll be giving you some written instructions at the end of the case. And at that time I may expand upon or refine these definitions for you. . . . But right now these are the basic definitions of the concepts which are going to be important [to] our case, and I think they'll be very helpful to you as you hear the evidence."

Then, specifically as to reasonable doubt, the judge stated:

"The first definition is the definition of proof beyond a reasonable doubt. Proof beyond a reasonable doubt has the following essential meaning: First of all, it is proof to a high degree. Second, it is more than proof of a probability or greater likelihood of doubt. Further, it is more than proof of a strong probability of guilt; however, it does not mean proof to an absolute certainty, nor proof beyond all possible doubt. The law refers to proof beyond a reasonable doubt as proof to a moral certainty. And proof to a moral certainty means that a juror first must conscientiously consider all the evidence and must then reach a resulting firm and settled belief that the charge is true. If a juror has conscientiously considered all the evidence and has not reached a firm and settled belief of the truth of the charge, th[e]n that juror has a reasonable doubt and must vote to acquit. That is the definition of proof beyond a reasonable doubt."

As promised, the judge provided jurors with a written transcription of this instruction for their reference, which was, except as noted below, essentially identical to the oral charge.

The defendants allege multiple errors. The defendants argue that by misspeaking when he stated that reasonable doubt "is more than proof of a probability or greater likelihood of *doubt*," the judge injected fatal confusion into the charge. All parties agree that the judge should have said "likelihood of *guilt*," and

the phrase appears in its correct form in the written instructions distributed to the jury. Contrast *Commonwealth v. Little*, 431 Mass. 782, 787-790 (2000) (error in oral charge repeated in written charge). We are not persuaded that the judge's obvious misstep held any serious potential to reduce the Commonwealth's burden of proof or otherwise confuse the jury as to the definition of reasonable doubt, especially as he rendered the correct charge in his final instructions to the jury. The jurors were also repeatedly advised by the trial judge to study the (correct) written copy of his preliminary charge, both at the time the written instructions were distributed and during the subsequent proceedings. To the extent that jurors are presumed to follow all instructions, we do not perceive any risk of prejudice. See *Commonwealth v. Bush*, 427 Mass. 26, 32 n.4 (1998) (obvious slip of tongue in reasonable doubt instruction did not provide basis for reversal).

The defendants argue that the trial judge, by stating in his *written*[5] instruction that "[p]roof to a moral certainty means that a juror must conscientiously consider all the evidence and then reach a resulting firm and settled belief that the charge is true," replicated essentially the same error that provided a basis for reversal in *Commonwealth v. Caramanica*, 49 Mass. App. Ct. 376, 378-379 (2000). The defendants argue that the word "must" should have been repeated before the phrase "reach a resulting firm and settled belief that the charge is true" (as the judge did in his oral charge) to describe the correct standard of proof. In *Caramanica*, the trial judge told the jury that they "should" have "a firm and settled belief" in the defendant's guilt as a prerequisite for a guilty verdict. *Id.* at 378. We concluded that the use of such permissive language is patently insufficient to communicate the high degree of certainty that must underlie a criminal conviction. Any misstep in this regard "goes to the heart of the message embodied by [the reasonable doubt charge]." *Ibid.*

---

[5]The defendants do not claim that this alleged error infected the judge's *oral* preliminary instruction in which he stated "proof to a moral certainty means that a juror first *must* conscientiously consider all the evidence and *must* then reach a resulting firm and settled belief that the charge is true" (emphasis added). The defendants allege that the second "must" was omitted from the written charge.

However, we do not agree with the defendants that the judge, in the present case, repeated the mistake identified in *Caramanica*. The contested language in the written instruction, fairly read, creates a mandatory requirement not only that jurors "conscientiously consider" the evidence, but also that they necessarily "reach a resulting firm and settled belief that the charge is true." In short, the word "must," in context, modifies both of the phrases that follow, resulting in a correct, mandatory formulation. Moreover, even if the sentence were deemed ambiguous in isolation, the sentence that follows immediately thereafter makes it clear that acquittal is mandatory where reasonable doubt remains: "[i]f a juror has conscientiously considered all the evidence and has not reached [a] firm and settled belief of the truth of the charge, then the juror has [a] reasonable doubt upon that charge." That clear admonition is sufficient to erase any possibility for confusion. See *Commonwealth* v. *Torres*, 420 Mass. 479, 490-491 & n.10 (1995) (in assessing adequacy of instructions, charge must be viewed in its entirety). The fact that the judge indisputably used the correct mandatory construction in his oral charge further reduces the likelihood of any prejudice. In short, our decision in *Caramanica* is simply inapposite to the present situation.

Next, the defendants assert that the preliminary instruction used the phrase "moral certainty" without providing an adequate definition of this difficult concept. It is well settled that the term "moral certainty" is susceptible to multiple interpretations and so should not be used in any charge on reasonable doubt absent sufficient explanatory language to assist jurors in understanding its correct meaning. See *Commonwealth* v. *McKinnon*, 446 Mass. 263, 268 (2006). However, the judge here, as we have noted, informed jurors that "proof to a moral certainty means that a juror first must conscientiously consider all the evidence and then reach a resulting firm and settled belief that the charge is true." Equating "moral certainty" with a "clear and settled belief" has been deemed an acceptable means of clarifying the meaning of the former phrase. See *Commonwealth* v. *Watkins*, 433 Mass. 539, 546 (2001) (phrase "clear and settled belief in the truth of the charges" conveys "core" of *Webster* charge). See also *Commonwealth* v. *Holman*, 51 Mass. App. Ct. 786, 788-790 (2001). There was no error.

Finally, the defendants, relying on *Commonwealth* v. *Lavalley*, 410 Mass. 641, 652 n.15 (1991), contend that the judge erred in providing written instructions to the jurors without the defendants' consent. According to the defendants, *Lavalley* prohibits the distribution of written instructions absent agreement by the parties. We do not read *Lavalley* to create any such proscription. Compare *Commonwealth* v. *Martin*, 424 Mass. 301, 311 n.5 (1997); *Commonwealth* v. *DiBenedetto*, 427 Mass. 414, 422 (1998). The content *and* manner of delivery of jury instructions is ultimately a matter that must be left to the discretion of the trial judge. See Mass.R.Crim.P. 24(b), 378 Mass. 895 (1979) (imposing no restrictions on form or timing of instructions). Further, even if *Lavalley* were deemed to bar the distribution of written instructions without a defendant's express consent, relief for violation of such a rule necessarily would hinge on whether providing a particular instruction in a particular form created prejudicial error. For the reasons already stated, we do not believe the preliminary instructions created any form of reversible error.

Our conclusion that the unusual procedure employed here by the trial judge does not provide a basis for reversal is bolstered by the fact that the judge repeatedly reminded the jury that the preliminary instruction on reasonable doubt was merely an overview of the law and that a complete delineation of the concept of reasonable doubt would be provided at the close of the trial. Further, and of greater importance, the judge in fact provided a comprehensive instruction on reasonable doubt in his main charge, at which time he made it plain that the later charge was meant to augment the preliminary instruction, stating:

> "Earlier in the case . . . I gave a definition of proof beyond a reasonable doubt to you as part of your preliminary instructions. And those preliminary instructions remain with you and are available to help you in your deliberation. But I want to cover that subject in more detail at this point . . . . First, I'm going to read to you verbatim a definition of proof beyond a reasonable doubt from [*Commonwealth* v. *Webster*,] an old and highly respected Massachusetts case or precedent. And this is

regarded as a classic statement of proof beyond a reasonable doubt."

The judge then read the traditional *Webster* instruction in its entirety. See *Commonwealth* v. *Rosa*, 422 Mass. 18, 29 (1996) ("[t]he *Webster* instruction carries great weight, and . . . [i]ts presence can provide adequate explanation of other facets of an instruction that by themselves might be considered erroneous, especially when *Webster* is the last thing a jury hear"). The judge also provided a correct, modern definition of reasonable doubt. The defendants concede, as they must, that the judge's final charge was complete and accurate in all respects. Viewing the preliminary and main charges in combination, we conclude that the jury received adequate instructions on reasonable doubt.

It is also important to note that this is not a situation in which a judge gave conflicting or contradictory instructions with respect to a particular concept. See *Commonwealth* v. *Repoza*, 400 Mass. 516, 520 (1987). In such cases, reversal is often required — especially where fundamental rights are concerned — unless it appears that express curative measures were taken by the trial judge to ensure that jurors not only received a correct explanation of the law, but also were instructed to ignore any prior incorrect statements. See *Commonwealth* v. *Grant*, 49 Mass. App. Ct. 169, 172-173 (2000); *Commonwealth* v. *Rodriguez*, 58 Mass. App. Ct. 610, 618 (2003). Here, by contrast, the defendants largely assert that the judge provided merely an incomplete instruction in his preliminary charge — a charge that was later augmented by an harmonious, comprehensive instruction in his main charge. The potential for prejudice in this latter situation is necessarily reduced.

We are also mindful of the fact that the jury here acquitted the defendants of a number of the crimes charged. While not dispositive of the outcome, these acquittals at least suggest that the jury were prepared to reject charges not adequately supported by the evidence. See *Commonwealth* v. *Howell*, 49 Mass. App Ct. 42, 48 (2000). In any event, we conclude that the reasonable doubt instruction and, more particularly, the manner in which it was delivered did not amount to prejudicial error.

Although the defendants are not entitled to relief in the

particular circumstances of this case, we emphasize that the procedure employed by the trial judge here unnecessarily courted confusion and should not be used in future cases. The concept of reasonable doubt lies at the core of our constitutional safeguards and is intimately related to two additional safeguards: the presumption of innocence and the Commonwealth's burden of proof. Even modest errors in explaining any of these concepts, or failing to relate them, can provide a basis for reversal, with the concomitant waste in public and judicial resources. Whenever jurors are instructed on the crucial concept of reasonable doubt, they should receive a full and accurate instruction.

In this case, all of the parties, including the Commonwealth, objected to the procedure used by the judge, as well as to the content of his charge. The judge would have been well-advised to accede to the wishes of the parties and to have provided a preliminary instruction on reasonable doubt in the form of the full *Webster* charge or one of the approved modern equivalents. As we stated in *Commonwealth* v. *Caramanica*, 49 Mass. App. Ct. at 382, quoting from *Commonwealth* v. *Therrien*, 371 Mass. 203, 208 (1976), "freehand embellishments of the standard charge . . . [too often] only create uncertainty and breed needless appeals."

With respect to Phillips's remaining claim of error, that the closing argument by Walker's attorney introduced facts not in evidence and "gutted" his defense, we note that Phillips was acquitted of all but one of the charges against him, and the acquittals were of the most serious of the charges. Our review of the closing, considered in the context of the entire argument, and in light of the judge's instruction to the jury and the evidence at trial, see *Commonwealth* v. *Howell*, 394 Mass. 654, 662 (1985), reveal no prejudicial error or any error that would amount to a substantial risk of a miscarriage of justice.

3. *Conclusion.* The judgment against defendant Ronnie Phillips is affirmed.

In the cases against defendants Walker and Broberg, the orders allowing their motions pursuant to rule 25(b)(2) are vacated, and new orders are to enter denying the motions. The jury verdicts of guilty of assault with intent to rape are reinstated

as to defendants Walker and Broberg, and the cases are remanded for sentencing.

The remaining convictions of defendant Walker are affirmed. In light of the reinstatement of the jury verdict on assault with intent to rape, the sentences on the convictions remaining against Walker are vacated. Defendant Walker's remaining convictions are remanded for resentencing in conjunction with the sentencing on the reinstated verdict of assault with intent to rape.

*So ordered.*